**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SANDRA COVINGTON,

    Plaintiff,

v.

CALIFORNIA DEPARTMENT OF SOCIAL SERVICES,

    Defendant.

No. C 12-04688 WHA

**NOTICE RE ORAL ARGUMENT**

For the upcoming hearing on May 8, 2014, counsel should be prepared to address the following items.

- Plaintiff Sandra Covington states (Covington Decl. ¶¶ 10, 18):

  On or about July 2009, I was informed by Ms. Troupe that I could no longer "flex" (i.e. change) my Alternate Work Week ("AWW") work schedule, meaning that I could no longer change my regularly scheduled day off every two weeks to a different day during the week. Participating in AWW program consists in working nine (9) hours during four (4) days of the workweek in exchange for having one (1) day off every two (2) workweeks. I have participated in the AWW program since 2005, but I did not change my normal day off on a regular basis. The procedure for flexing days off was to notify the LPM that you were changing your normal day off and note the change in your Outlook calendar. Since I had been able to change my normal day off for years while under the supervision of other LPMs, I inquired with RM Martin as to why I was no longer allowed to change my normal day off. In response, RM Martin told me that I could no longer change my normal day off because Sacramento needed to know exactly when an LPA was off. However, Ms. Martin's response appears to be untruthful because I observed that other

> non-African American LPAs (Moira Aguilar and Richard Gasparini) were still allowed to change their normal day off under the AWW program, and Sacramento received correspondence that was signed off by the LPM, RM and Program Administrator that clearly states which LPAs are on the AWW program and which days the LPAs were going to be off.
>
> \*           \*           \*
>
> In addition to the above, I was subjected to disparate treatment and retaliation regarding my request to attend training, including the Master Analyst Program ("MAP"). I requested to attend MAP in 2009 and 2010. In or around 2010, I was informed that the MAP training was for LPAs who perform at a journey level and that I did not possess the requisite skills to be nominated to attend the MAP training. That statement is untrue. Richard Gasparini was nominated to attend the MAP training in 2010. I observed Mr. Gasparini's substandard performance around that time when I was assigned a complaint regarding a facility at which he granted a license application that contained several errors. I also observed that he had several outstanding complaints during that time that were not investigated in a timely manner. I had a heavier caseload than Mr. Gasparini, in addition to the extra field visits management requested that I perform, and I was also training new LPAs around that time . . . .

Counsel will please address whether either part above from Covington's declaration is sufficient to create a triable issue of fact in demonstrating pretext for the claims of race discrimination and retaliation.

- In addition, the Department will please prepare a response as to why Covington was not allowed to "flex" her Alternative Work Week Schedule, when Moira Aguilar and Richard Gasparini were reportedly allowed to change their normal day off under the Alternative Work Week program.

- The Department is also requested to please bring copies of any of Gasparini's performance evaluations, but only if those evaluations are part of the summary judgment record.

2

1      •      Finally, the undersigned judge has reviewed the exhibits appended to Covington's declaration (Dkt. No. 46). Those exhibits, however, are unclear in identifying what work errors her co-workers supposedly made. Counsel's assistance is therefore needed at hearing to determine what is or is not a work error, in the context of Covington's exhibits.

Dated: May 6, 2014.

/s/ William Alsup
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

3